UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRANDON E. KLEIN,<br><br>        Plaintiff,<br><br>        v.<br><br>OFFICER TIMOTHY MELE, individually and in his official capacity, OFFICER BRIAN DANIELS, individually and in his official capacity, and the TOWN OF SCHERERVILLE,<br><br>        Defendants. | CAUSE NO.: 2:19-CV-484-TLS-JPK |

**OPINION AND ORDER**

This matter is before the Court on the Defendants' Motion to Dismiss [ECF No. 13], filed by Defendants Officer Timothy Mele, Officer Brian Daniels, and the Town of Schererville. For the reasons set forth below, the Court grants in part and denies in part the motion.

**MOTION TO DISMISS STANDARD**

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing a motion to dismiss, a court considers "the complaint itself" as well as "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). The Defendants attached eleven exhibits to their motion, with Exhibits A through F consisting of the probable cause affidavit, information, and order of probable cause related to the two prosecutions in this case. *See* ECF Nos. 14-1 through 14-6. The Court considers these public records to the extent they show that the proceedings occurred, the facts of the representations made therein, and the stated bases for the probable cause determinations; the Court does not consider them for the truth of the facts regarding the two underlying incidents. *See* Fed. R. Evid. 201; *Daniel v. Cook County*, 833 F.3d 728, 742 (7th Cir. 2016) ("Courts routinely take judicial notice of the actions of other courts or the contents of filings in other courts."). The Court does not consider Defendants' Exhibits G through K because they relate solely to the issue of whether the prosecutions terminated in the Plaintiff's favor—an issue the Court does not reach. *See* ECF Nos. 14-7 through 14-11. For the same reason, the Court does not consider the Plaintiff's Response Exhibits 1 through 5. *See* ECF Nos. 26-1 through 26-5. Finally, the Court does not consider the Plaintiff's Response Exhibit 7, a video of his presence at the SPD on September 22, 2015, because the Plaintiff alleges that he was arrested for violating

the Protective Order, not for creating a disturbance at the SPD. *See* Compl. ¶ 40; Pl. Resp. Ex. 7, ECF Nos. 26-7, 27.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 16, 2019, Plaintiff Brandon E. Klein filed a Complaint [ECF No. 1] against Defendants Officer Timothy Mele, Officer Brian Daniels, and the Town of Schererville under 42 U.S.C. § 1983, alleging claims of malicious prosecution in violation of his Fourth and Fourteenth Amendment rights in relation to his arrests for violating a state court order of protection on September 22, 2015, and December 25, 2016. The following facts are taken from the allegations of the Complaint, the documents attached to the Complaint, and public records of which the Court takes judicial notice.

The Plaintiff and Leanne R. Salatas were married on May 18, 2013, and they separated on October 31, 2014. Compl. ¶ 11, ECF No. 1. They later divorced. *Id*. They had a child in November 2014. *Id*. at ¶ 12.

On August 21, 2015, Salatas filed a petition for the issuance of a protective order against the Plaintiff, and an Ex Parte Order for Protection (Protective Order) was granted the same day by the Lake Superior Court, Division 3. *Id*. at ¶ 13. The Protective Order contained two restrictions regarding communications. *Id.* at ¶ 14. First, the Plaintiff was "enjoined from threatening to commit or committing acts of domestic or family violence or stalking against [Salatas]." *Id*.; Compl. Ex. 1 at 2, ECF No. 1-5. Second, the Plaintiff was "prohibited from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [Salatas] except: Any communication or contact necessary for the exercise of [the Plaintiff's] parenting time and any communication involving the parties' minor child." Compl. ¶ 14; Compl. Ex. 1 at 2. The Protective Order further provided that "[the Plaintiff] shall be excluded from

[Salatas'] residence," that "[the Plaintiff] is ordered to stay away from the residence, school and/or place of employment of [Salatas]," and that "[the Plaintiff] is further ordered to stay away from the following place(s) that is/are frequented by [Salatas] and/or [Salatas'] family or household members: . . . 504 Benco Court . . . ." Compl. ¶ 15; Compl. Ex. 1 at 2–3. The Plaintiff was "expressly permitted to engage in communications necessary to exercise his parenting time or involving his minor child." Compl. ¶ 16. The Protective Order was in effect at all times relevant to the facts alleged in the Complaint. *Id.* at ¶ 17.

In Count I, the Plaintiff brings a claim of "malicious prosecution," alleging that Officer Mele and the Town of Schererville violated his right to due process right under the Fourth and Fourteenth Amendments based on the following events. *Id.* at ¶ 26. On December 25, 2016, at 12:10 p.m., Salatas arrived at the Schererville Police Department (SPD) to file a report regarding an allegedly annoying email she had received from the Plaintiff. *Id.* at ¶ 19; Compl. Ex. 2, ECF No. 1-6. In her meeting with the SPD, Salatas admitted that she failed to exchange custody of their minor child at the appropriate time, as was the Plaintiff's right under the then-existent parenting agreement, and had insisted that the Plaintiff appear in person instead of sending his mother to pick up their child. Compl. ¶ 20; Compl. Ex. 2. In response to Salatas' failure to turn over custody of their child the Plaintiff sent Salatas an email expressing his concern over Salatas' failure to hand over custody of their child as was his right. Compl. ¶ 21; Compl. Ex. 3, ECF No. 1-7. The email provides:

> Leanne--- I would like to exercise custody of my daughter without being around you. As you know, my mother showed up at mcdonalds in crown point this morning to pick up [S.S.]; however, you refused to give [S.S.] to my mother, demanding my presence before you. I was not there this morning because my fiancé and I attended midnight mass last night with some friends. Hence, why I suggested a drop off time for [S.S.] at 10am this morning instead of 9am. As you know, for arguments sake, I agreed to your persistent demand for a 9am drop off time.

4

> One minute you want an order of protection against me and the next minute you demand me to be either at your house alone with you or meeting you in some public place to exchange [S.S.] with you. *One minute you want an order of protection, the next minute you want to reconcile "our relationship" and get back in bed so you can try and get pregnant again. Your conflicting mood swings/changes in behavior are concerning to say the least, and I do not feel comfortable being around you.* To be quite frank, the same behavior has me concerned for the safety and well being of my daughter. I'm not sure what's wrong with you, but you may want to start thinking about what's in the best interest of [S.S.]. Perhaps returning to counseling at Crown Counseling would be beneficial not only for you, but for everyone else involved, including [S.S.].
>
> Brandon

Compl. Ex. 3 (emphasis added). The Plaintiff alleges that, when read in context, nothing in the email can be reasonably interpreted as violating the protective order. Compl. ¶ 22.

On January 3, 2017, Officer Mele met with Prosecutor Timothy Brown regarding this case, Brown reviewed the email, and Brown and Officer Mele agreed that the two sentences of the email italicized above violated the Protective Order. Compl. Ex. 2 at 1. Officer Mele reported that Brown requested that Officer Mele file charges of invasion of privacy. *Id.* at 2. On January 10, 2017, a warrant was issued for the Plaintiff's arrest for invasion of privacy based on the email. Compl. ¶ 23; Def. Ex. C, ECF No. 14-3. The Plaintiff alleges that the arrest warrant was issued despite the facially appropriate subject matter of the email, the lack of vulgarity, and the absence of any clear intent to do anything other than negotiate with Salatas to participate in his parenting time. *Id*. at ¶ 23. On June 16, 2017, the Plaintiff was arrested out of state at his place of business by a Chicago fugitive task force, causing him the humiliation of being arrested in front of his peers and colleagues. *Id*. at ¶ 24. The Plaintiff was not released from jail until July 17, 2017. *Id*. at ¶ 25.

The Plaintiff alleges that Officer Mele acted maliciously, with intent, or with reckless disregard of the Plaintiff's protected rights when he initiated the prosecution of the Plaintiff by

5

swearing, under oath, that the Plaintiff had committed a crime of invasion of privacy by violating the Protective Order and that Officer Mele intentionally interpreted two sentences of the email out of context, both of which the Plaintiff alleges were directly linked to his daughter and the coordination of custody exchanges with his ex-wife in a reasonable manner. *Id*. at ¶ 27. The Plaintiff alleges that there was no probable cause for his arrest, *id*. at ¶ 30, and that the prosecution terminated in his favor, *id.* at ¶ 31.

In Count II, also for "malicious prosecution," the Plaintiff alleges that Officer Daniels and the Town of Schererville violated his constitutional right to due process under the Fourth and Fourteenth Amendments based on the following events that took place over a year earlier. *Id*. at ¶ 35. On September 22, 2015, the Plaintiff was expecting a critical piece of mail for his job, which was to be delivered to 504 Benco Court, Salatas' home. *Id*. at ¶ 36. The Plaintiff, knowing that the Protective Order forbade him access to that address, went to the SPD to find out whether he was permitted to pick up his mail. *Id.* at ¶ 37. The Plaintiff was told by the SPD that he was permitted to go to the address to pick up his mail if an officer was present. *Id*. The Plaintiff was also informed that an officer was being dispatched to the address. *Id*.

The Plaintiff then went to 504 Benco Court with his mother to retrieve the mail, at which time Officer Daniels, who was present, told the Plaintiff's mother that the Plaintiff "needed to leave immediately as he is restrained from this residence." *Id*. at ¶ 38; Compl. Ex. 4 at 2, ECF No. 1-8. Without significant delay and without ever fully leaving the vehicle, the Plaintiff left in the vehicle being driven by his mother. Compl. ¶ 38; Compl. Ex. 4 at 2.

In the Arrest Narrative, Officer Daniels reported that the Plaintiff had been told to come to the SPD to obtain his mail. Compl. ¶ 39; Compl. Ex. 4 at 2. Officer Daniels further reported that he contacted deputy prosecutor Bruno and that Bruno advised that Officer Daniels could file

6

charges for invasion of privacy. Compl. Ex. 4 at 2. When the Plaintiff arrived at the SPD, his mail was not there, and he waited patiently to discuss the situation with an officer. Compl. ¶ 39. While he was waiting, the Plaintiff was arrested and taken into custody for violating the Protective Order based on his presence at 504 Benco Court. *Id.* at ¶ 40.

The Plaintiff alleges that Officer Daniels acted maliciously, with intent, or with reckless indifference to the Plaintiff's protected rights when he initiated a prosecution of the Plaintiff by swearing, under oath, that the Plaintiff had committed a crime of invasion of privacy by violating a Protective Order despite the Plaintiff have been told that he was permitted to appear at the address for the purposes of retrieving his mail and despite Officer Daniels' first-hand knowledge that the Plaintiff had neither approached Salatas or even fully exited the vehicle prior to following Officer Daniels' direction to exit the area. *Id*. at ¶ 41. The Plaintiff alleges that, because he acted upon the advice of the SPD to go to the address to obtain his mail, he lacked the necessary "knowing" element needed for a violation of a protective order and Officer Daniels knew or should have known this at the time of the Plaintiff's arrest. *Id*. at ¶ 42. The Plaintiff alleges that there was no probable cause for his arrest, *id.* at ¶ 45, and that the prosecution terminated in his favor, *id.* at ¶ 46.

Against the Town of Schererville, the Plaintiff alleges in Count I that the Town failed to sufficiently train Officer Mele and/or failed to develop sufficient policies, procedure, and practices to ensure officers like Officer Mele correctly interpret the specific contents of protective orders prior to making arrests and that this failure constitutes a "widespread practice or custom." *Id.* at ¶¶ 28, 29. In Count II, the Plaintiff makes the same allegations against the Town as to Officer Daniels. *Id*. at ¶¶ 43, 44.

## ANALYSIS

The Complaint frames the Plaintiff's claims uniquely as ones of "malicious prosecution," alleging that the Defendants deprived him of "federal protected rights, including, but not limited to, the right to due process deriving from the United States Constitution and its Fourth and Fourteenth Amendments." *Id*. at ¶¶ 2, 9, 26, 35. Count I brings a claim for "malicious prosecution," alleging that the SPD's and Officer Mele's wrongful actions directly caused the Plaintiff's "detention and prosecution" related to the December 25, 2016 incident. *Id*. at ¶ 33. Similarly, Count II for "malicious prosecution" alleges that the SPD's and Officer Daniels' wrongful actions directly caused the Plaintiff's "detention and prosecution" related to the September 22, 2015 incident. *Id.* at ¶ 48. In the motion to dismiss, the Defendants argue that the Plaintiff has failed to state a claim of malicious prosecution, that Officers Mele and Daniels are entitled to qualified immunity, and that the Plaintiff has failed to state a claim of *Monell* liability against the Town of Schererville. In light of the developments in Fourth and Fourteenth Amendment jurisprudence, the Plaintiff's claims are properly framed under the Fourth Amendment for unlawful pretrial detention, and only the claim against Officer Daniels survives.

To begin, the Plaintiff's Complaint specifically invokes *Julian v. Hanna*, alleging that his malicious prosecution claims may be brought in federal court because of the inadequate remedies offered by the State of Indiana. *See* Compl. ¶ 2 (citing *Julian v. Hanna*, 732 F.3d 842 (7th Cir. 2013)). Indeed, the Seventh Circuit has held that a § 1983 claim of malicious prosecution is "not actionable if there is an adequate state-law remedy." *Howlett v. Hack*, 794 F.3d 721, 727 (7th Cir. 2015) (quoting *Newsome v. McCabe*, 256 F.3d 747, 750–51 (7th Cir. 2001), *abrogated on other grounds by Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ("*Manuel I*")). Although Indiana state law recognizes the tort of malicious prosecution, the Indiana Tort Claims Act shields

government employees from these claims. *Id.* (citing Ind. Code § 34-13-3-3(6)). As a result, because "Indiana state law does *not* provide an adequate remedy for malicious prosecution," a malicious prosecution claim can be brought against a police officer under § 1983 for the "violation of a particular constitutional right." *Serino v. Hensley*, 735 F.3d 588, 592, 593 (7th Cir. 2013) (citing *Julian*, 732 F.3d at 847–48); *see Howlett*, 794 F.3d at 727–28.

To succeed on such a claim of malicious prosecution under § 1983, "a plaintiff must demonstrate that (1) he has satisfied the elements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Welton v. Anderson*, 770 F.3d 670, 674 (7th Cir. 2014) (citing *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996)). The elements of a malicious prosecution claim under Indiana law are: "(1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.* (citing *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009)). The Defendants seek dismissal on the basis that the Plaintiff cannot meet elements two through four as to his underlying detentions and prosecutions.

However, neither party addresses the threshold issue of what constitutional violation underpins the Plaintiff's § 1983 claims. The Seventh Circuit Court of Appeals has consistently held that "'[f]ederal courts are rarely the appropriate forum for malicious prosecution claims' . . . because 'individuals do not have a federal right not to be summoned into court and prosecuted without probable cause.'" *Serino*, 735 F.3d at 593 (quoting *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011)); *see also Young v. City of Chicago*, 987 F.3d 641, 646 (7th Cir. 2021) ("[T]here is no such thing as a constitutional right not to be prosecuted without probable cause."

(quoting *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("*Manuel II*"))). Thus, a plaintiff bringing a § 1983 malicious prosecution claim must allege a violation of a particular constitutional right. *Welton*, 770 F.3d at 673–74 (quoting *Serino*, 735 F.3d at 592; citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979) ("[I]t is necessary to isolate the precise constitutional violation with which [the defendant] is charged . . . . The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right secured by the Constitution and laws.")); *see Manuel I*, 137 S. Ct. at 920 (recognizing that the threshold inquiry in a § 1983 suit is to "'identify the specific constitutional right' at issue" (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994))); *Howlett*, 794 F.3d at 727–28.

Prior to the Plaintiff filing his Complaint in this case, the Seventh Circuit clarified that, after the Supreme Court decision in *Manuel I*, "'Fourth Amendment malicious prosecution' is the wrong characterization" for a claim of unlawful pretrial detention. *Manuel II*, 903 F.3d at 670. "There is only a Fourth Amendment claim—the absence of probable cause that would justify the detention." *Id.* (citing *Manuel I*, 137 S. Ct. at 917–20); *see also Stone v. Wright*, 734 F. App'x 989, 989 (7th Cir. 2018) ("*Manuel [I]* says that there is no such thing as 'Fourth Amendment malicious prosecution.' Wrongful arrest or detention creates a wrongful-seizure claim, plain and simple, and the constitutional objection is to wrongful custody rather than to a criminal prosecution." (citing *Manuel I*, 137 S. Ct. at 917–20)). Thus, "all § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) (citing *Manuel II*, 903 F.3d at 669).

To the extent that the Plaintiff is attempting to bring a due process claim based on his pretrial detention, "*Manuel I* makes clear that the Fourth Amendment, not the Due Process

Clause, governs a claim for wrongful pretrial detention." *Id.* at 475. "[D]etention without probable cause violates the Fourth Amendment 'when it precedes, but also when it follows, the start of legal process in a criminal case.'" *Id.* at 474 (quoting *Manuel I*, 137 S. Ct. at 918); *see Gupta v. Melloh*, 19 F.4th 990, 1001–02 (7th Cir. 2021) ("[T]he Supreme Court decision in *Manuel* [*I*], makes clear that a plaintiff can bring a Fourth Amendment claim for unlawful detention either before or after the start of the legal proceedings." (citing *Manuel I*, 137 S. Ct. at 918–19)). Thus, a claim of falsified police reports leading to pretrial detention does not give rise to a separate constitutional claim under the due process clause. *See Lewis*, 914 F.3d at 478, 479–80 (noting also the distinction between a claim for wrongful pretrial detention and a claim of wrongful conviction based on fabricated evidence, with the latter always violating the defendant's right to due process);[1] *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020) ("A claim for . . . pretrial detention based on fabricated evidence sounds in the Fourth Amendment right to be free from seizure without probable cause.").

In this case, the Plaintiff alleges that the Defendants' wrongful conduct resulted in his detention and his prosecution. *See* Compl. ¶¶ 33 (Officer Mele), 48 (Officer Daniels). There is no constitutional right not to be prosecuted without probable cause. *Young*, 987 F.3d at 646. And there are no factual allegations regarding a violation of his Fourteenth Amendment due process right to a fair trial. *See, e.g.*, *Coleman v. City of Peoria*, 925 F.3d 336, 344 (7th Cir. 2019) ("Using false evidence to convict violates a defendant's right to a fair trial guaranteed by the Fourteenth Amendment's Due Process Clause." (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935))). Thus, the Plaintiff has alleged no facts to support a § 1983 due process claim under the

---

[1] In *Lewis*, the Seventh Circuit overruled *Hurt v. Wise*, 880 F.3d 831 (7th Cir. 2018), which had held that a Fourteenth Amendment due process claim for unlawful pretrial detention—based "on the malicious-prosecution/due-process theory embedded" in the circuit case law—survived *Manuel I*. *See Lewis*, 914 F.3d at 478–79 (citing *Julian*, 732 F.3d 842; *Newsome*, 256 F.3d 747).

Fourteenth Amendment. Accordingly, even though the Complaint uses the label "malicious prosecution," the Court considers the claims to be Fourth Amendment unlawful pretrial detention claims. *See, e.g.*, *Lewis*, 914 F.3d at 478–80; *Camm v. Faith*, 937 F.3d 1096, 1100 (7th Cir. 2019) (finding, in a case alleging that Indiana state troopers willfully or recklessly made false statements in three probable cause affidavits that led to the plaintiff's arrest and custody while he awaited trial and retrial, that "'malicious prosecution' is the wrong label" and that it is "a Fourth Amendment claim for wrongful arrest and detention").

"The Fourth Amendment prohibits unreasonable searches and seizures." *Young*, 987 F.3d at 644. Under the Fourth Amendment, "a pretrial detention is a 'seizure'—both *before* formal legal process and *after*—and is justified only on probable cause." *Lewis*, 914 F.3d at 477 (citing *Manuel I*, 137 S. Ct. at 918). "[P]robable cause is a common-sense inquiry requiring only a probability of criminal activity; it exists whenever an officer or a court has enough information to warrant a prudent person to believe criminal conduct has occurred." *Young*, 987 F.3d at 644 (quoting *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983))). "This 'is not a high bar.'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). Probable cause "is 'assessed objectively' based on 'the conclusions that the arresting officer reasonably might have drawn from the information known to him.'" *Id*. (citations omitted). Moreover, "falsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment." *Gupta*, 19 F.4th at 1002 (citing *Lewis*, 914 F.3d at 477 (citing *Franks v. Delaware*, 438 U.S. 154, (1978))); *see also Taylor v. Hughes*, 26 F.4th 419, 426–27 (7th Cir. 2022). This includes intentionally or recklessly withholding material information from a probable cause affidavit. *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Rainsberger v. Benner*, 913 F.3d 640, 647 (7th Cir. 2019)).

The Court considers whether the Plaintiff has stated a Fourth Amendment claim of wrongful detention claim based on each of the two incidents alleged in the Complaint.

1. *Officer Mele—the December 25, 2016 Christmas Day Email*

The Defendants argue that there was probable cause for the December 25, 2016 invasion of privacy charge initiated by Officer Mele. The Protective Order prohibited the Plaintiff from engaging in any type of harassment, annoyance, and communication with Salatas, the Plaintiff's ex-wife, except "[a]ny communication or contact necessary for the exercise of [the Plaintiff's] parenting time and any communication involving the parties' minor child." Compl. Ex. 1, at 2.

On December 25, 2016, at 12:10 p.m., Salatas arrived at the SPD to file a report concerning an allegedly annoying email she received from the Plaintiff, and she provided a copy of the email to the SPD. Within the two-paragraph email regarding the failed exchange of custody of their minor child earlier that day, the text of which is set out in full in the Background above, the Plaintiff wrote: "One minute you want an order of protection, the next minute you want to reconcile 'our relationship' and get back in bed so you can try and get pregnant again. Your conflicting mood swings/changes in behavior are concerning to say the least, and I do not feel comfortable being around you." Compl. Ex. 3. These two sentences were the basis of the charges of invasion of privacy. *See* Compl. Ex. 2; Def. Ex. A–C (Mele Probable Cause Aff.; Information; Order of Probable Cause), ECF Nos. 14-1 through 14-3. Probable cause is established from these undisputed facts alleged in the Complaint and set forth in the email, which speaks for itself. The Plaintiff does not dispute that he sent the email or that the email contains those sentences. Although the Plaintiff argues that the email addresses parenting time, he does not argue that these sentences are related to that permissible topic of communication. A

commonsense, objective, and reasonable reading of those sentences is that they are harassing and annoying and do not relate to the exercise of the Plaintiff's parenting time.

Accordingly, the Court grants the motion to dismiss the claim in Count I against Officer Mele.[2] In addition, the Court grants the motion to dismiss Count I as to the Town of Schererville because there can be no *Monell* liability in the absence of an underlying constitutional violation. *See Word v. City of Chicago*, 946 F.3d 391, 395 (7th Cir. 2020) (citing *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007)).

2.      *Officer Daniels—the Plaintiff's Presence at Benco Court on September 22, 2015*

The Defendants argue that there was probable cause for the invasion of privacy charge initiated by Officer Daniels arising out of the events of September 22, 2015. The Defendants note that the Protective Order prohibited the Plaintiff from going to Salatas' residence, including the 504 Benco Court address. *See* Compl. Ex. 1, at 2–3. And, on September 22, 2015, the Plaintiff went to the 504 Benco Court address, accompanied by his mother, to retrieve his mail. Officer Daniels states in the Arrest Narrative that he informed SPD dispatch to have the Plaintiff wait in the SPD lobby while he went to the location to try to obtain the mail and that dispatch advised they informed the Plaintiff of Officer Daniels' actions. Compl. Ex. 4, at 2.

In contrast, the Plaintiff alleges that, knowing the Protective Order prohibited him from going to the 504 Benco Court address, he went to the SPD to find out whether he was permitted to pick up his mail. He alleges that he was told by the SPD that he could go to the 504 Benco Court address to pick up his mail if an officer was present and that an officer was being dispatched to the address. The Plaintiff further alleges that Officer Daniels knew that the Plaintiff had been told this information but failed to include it when he completed the probable cause

---

[2] Because the Court finds that the Plaintiff has not established a constitutional violation, the Court need not consider the remainder of Officer Mele's argument for qualified immunity.

affidavit. Thus, the Plaintiff alleges that Officer Daniels lacked probable cause to initiate the charges that led to his arrest and detention because Officer Daniels knew that the Plaintiff had been told he could appear at the 504 Benco Court to retrieve his mail. If it proves to be true that Officer Daniels made material omissions in the probable cause affidavit, the Plaintiff's "detention was unreasonable in violation of the Fourth Amendment." *Lewis*, 914 F.3d at 477. Officer Daniels' knowledge is a question of fact not properly resolved on a motion to dismiss.

The Defendants note that the Protective Order provides that the Plaintiff "is forbidden to enter or stay at the petitioner's residence . . . *even if invited to do so by the petitioner or any other person*. In no event is the order of protection voided." Compl. Ex. 1 at 4 (emphasis added). However, on the instant motion, the Defendants offer no textual or legal support that the Plaintiff would be in violation of the Protective Order if accompanied to the address by a police officer with the express permission of the police.

The Defendants also argue that the state court order of probable cause is prima facie evidence of probable cause. "When an arrest is judicially authorized . . . 'we presume the validity of [the] warrant and the information offered to support it.'" *Camm*, 937 F.3d at 1105 (quoting *Whitlock*, 596 F.3d at 410). However, "the presumption may give way on a showing that the officer who sought the warrant knowingly or intentionally or with a reckless disregard for the truth[] made false statements to the judicial officer and that the false statements were necessary to the judicial officer's determination." *Id.* (quoting *Whitlock*, 596 F.3d at 410)). Here, because the judicial determination of probable cause was based Officer Daniels' alleged material omissions in the probable cause affidavit, the presumption of validity gives way based on the allegations at this stage of the case.

Officer Daniels asserts that he is entitled to qualified immunity based on his belief that probable cause existed and because he relied on the advice of counsel. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lewis*, 914 F.3d at 477 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1151 (2018)). A court conducts a two-part inquiry when qualified immunity is invoked, determining "(1) whether facts alleged or shown by a plaintiff make out a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). On a similar claim of wrongful pretrial detention based on falsified evidence, the Seventh Circuit recognized that "[i]t has been clear since at least *Franks v. Delaware* . . . , that falsifying the factual basis for a judicial probable-cause determination violates the Fourth Amendment." *Id.* Again, the Plaintiff alleges that Officer Daniels knew that the Plaintiff had been told by the SPD that it was okay for him to go to 504 Benco Court with the officer who had been dispatched to that location but then omitted that fact from his probable cause affidavit. Based on the facts alleged at this stage of the litigation, "no reasonable officer could have thought this conduct was constitutionally permissible." *Id.*

In certain instances where the law is clearly established, an officer's reliance on the advice of counsel may entitle the officer to qualified immunity as an exception to the lack of immunity based on "extraordinary circumstances." *Davis v. Zirkelbach*, 149 F.3d 614, 620 (7th Cir. 1998) (citing *V-1 Oil Co. v. Wyoming*, 902 F.2d 1482 (10th Cir. 1990)). Relevant factors informing such a determination "include how unequivocal, and specifically tailored to the particular facts giving rise to the controversy, the advice was, whether complete information had been provided to the advising attorney(s), the prominence and competence of the attorney(s), and

16

how soon after the advice was received the disputed action was taken." *Id.* (quoting *V-1 Oil Co.*, 902 F.2d at 1488–89). Based on the Plaintiff's allegations, Officer Daniels' reliance on the prosecutor's direction to file charges is insufficient because the prosecutor's advice was based on incomplete information, namely Officer Daniels' alleged omission regarding the permission granted the Plaintiff by the SPD to go to the 504 Benco Court address. Thus, Officer Daniels is not entitled to qualified immunity based on the reliance of counsel.

Accordingly, the Plaintiff has pleaded a plausible Fourth Amendment claim against Officer Daniels for unlawful pretrial detention, and the Court denies the motion as to this claim in Count II. However, the Plaintiff has failed to state a claim of *Monell* liability against the Town of Schererville in Count II. There is no respondeat superior liability under § 1983, and a government entity, such as a town, is only liable for damages under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). To state a claim against a municipality under § 1983, a plaintiff must allege either that (1) the municipality had an express policy that, when enforced, causes a constitutional deprivation; (2) the municipality had a widespread practice that is so permanent and well settled it constitutes a custom or usage with the force of law; or (3) a person with final policymaking authority caused the plaintiff's constitutional injury. *Id.* (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)). The Plaintiff is proceeding under the second option, alleging that the Town of Schererville's failure to sufficiently train Officer Daniels and to develop sufficient policies, procedures, and practices constitutes a widespread policy of custom.

The Defendants argue that the Plaintiff fails to allege facts to support a widespread policy, practice, or custom and that the Plaintiff has offered only boilerplate recitations of the elements of a *Monell* claim. As set forth above, the only facts alleged in the Complaint that support a constitutional violation of this nature are those against Officer Daniels. One instance alone, without more, is not enough for municipal liability under *Monell*. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (explaining that "[t]he specific actions of the detectives in Gill's case alone, without more, cannot sustain a *Monell* claim based on the theory of a *de facto* policy"). Accordingly, the Court grants the motion to dismiss Count II as to the Town of Schererville.

## CONCLUSION

Based on the foregoing, the Court hereby GRANTS in part and DENIES in part the Defendants' Motion to Dismiss [ECF No. 13], dismissing Count I brought against Defendants Officer Mele and the Town of Schererville and dismissing Count II as to the Town of Schererville. Accordingly, the Court DISMISSES the Complaint as to Defendants Officer Mele and the Town of Schererville. The case remains pending on Count II against Officer Daniels.

SO ORDERED on March 21, 2022.

s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT